92  279
96   11
96  438

92  279
101 681

92  279
138 447

92  279
143 631

# Ala. Great Southern Railway Co. *v.* Moody.

### *Action for Damages for Killing Bull.*

1. *Proof of value of animal-killed.*—A witness who knew the animal killed (a thorough-bred bull), his breed and peculiar merits, may testify to its value, although he may not be an expert, and although his opinion is not based upon actual sales at or near the place.

2. *Relevancy of evidence in rebuttal, as to quality of head-light.*—In an action to recover damages for injuries to stock by a railroad train at night, the defendant's engineer and fireman having testified that they did not discover the animal on the track in time to avert the injury, and that the head-light did not enable them to see an animal on the track more than sixty feet in advance of the engine; it is competent for the plaintiff, in rebuttal, to prove facts showing that on other occasions, in the same neighborhood, and under circumstances no more favorable, objects on or near the track were visible at a distance of two or three hundred yards by the aid of the head-light.

3. *Charge on evidence as to negligence.*—The court having charged the jury, on request, that they must find for the defendant, if they believed his evidence, which was in rebuttal of the *prima facie* case of negligence made out by the plaintiff's evidence, may further instruct them, on request, "that they are not bound to find for the defendant at all events, but may find for the plaintiff if they do not believe the evidence tending to acquit the defendant of negligince."

4. *Same.*—A charge which instructs the jury that the plaintiff is entitled to recover, if the animal could and ought to have been seen in time for the engineer to check the speed of the train and blow the whistle, though it might not and could not have been seen in time to stop the train, so as to avoid the injury, is erroneous; and the error is not cured by a subsequent charge, called an "explanatory charge," instructing the jury that they "must further believe that the accident could have been prevented if the engineer had seen the animal as soon as he could and ought to have seen him."

5. *Giving charge as asked; explanatory or qualifying charge.*—The statutory provision which requires that charges asked in writing shall be given or refused in the terms in which they are written (Code, § 2756), prohibits a qualifying, limiting, or modifying charge, but not

an explanatory charge, which merely simplifies the charge asked and given, or relieves it of involvement or obscurity.

6.  *Duty and liability of railroad company in matter of head-lights, or other appliances.*—It is the duty of a railroad company to exercise the utmost practicable care and diligence, and keep apace with the improvements of progressive skill and experience, adopting such machinery and appliances as shall be found, by actual tests, to diminish the perils of life and property incident to the business; but utility as demonstrated by use, and not the mere adoption of an invention by the best equipped roads, is the measure and standard of duty in this particular; and therefore, where the evidence tends to establish the use of a defective head-light on the defendant's engine at the time of the accident, a charge which instructs the jury that a head-light "such as *are in use* on the best equipped railroads," is the test of a proper head-light, is erroneous.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

This suit was brought by the appellee, Frank S. Moody, against the appellant railroad corporation; and sought to recover damages for the killing of a Galloway bull, the property of the plaintiff, which was alleged to have been caused by the negligence of the defendant in running its locomotive and train of cars.   The defendant pleaded the general issue, and issue was joined thereon.

On the trial, it was shown that the animal was killed by one of the defendant's trains at a point on its road at about 6.45 o'clock in the afternoon.   It was undisputed that the defendant's schedule rate of speed on the portion of the road upon which the accident occurred was 22 miles per hour; that the train which killed the animal was running at a rate of 35 miles per hour; that a train running at that rate could not have been stopped in a less space than 300 yards; that the night of the accident was clear, dry and dark; that the locomotive which killed the animal had on it a head-light which would not enable the engineer and fireman to see obstructions on the track farther than 60 feet in front of the locomotive; that the animal was not in fact seen by the engineer or fireman until the locomotive was in 60 feet of him; and that when seen he was standing on the track.   There was some evidence tending to show that a proper head-light, when in good order, would cast its light so that obstructions on the track would be visible at a much greater distance than 60 feet from the moving train. There was much conflicting testimony.   The evidence of the witnesses Hamner and Bridges, to which objection and exception was reserved, is sufficiently shown in the first paragraph of the opinion.   The witness Hollins testified that on one occasion "the engineers of the A. G. S. R. R. blew their whistles at him in the years 1887 and 1888 when he was walking along said railroad track at least 300 yards ahead of the train."   The

[Ala. Great Southern Railway Co. v. Moody.]

defendant moved to exclude this testimony as irrelevant and illegal; and duly excepted to the court's overruling this motion. The said witness Hollins and one Bridges, another witness, testified that, in their opinion, a head-light to an engine would throw such a light as would enable the engineer to see several hundred yards ahead of the engine. The defendant moved to exclude this testimony of both the witnesses, on the ground that they were not shown to be experts, nor shown to have had any experience as to the distance head-lights to an engine would throw their light; and separately excepted to the court overruling its motion in reference to each of these witnesses.

The court, in his oral charge to the jury, instructed them, among other things, that "if they believed the defendant's evidence, they must find for the defendant." The plaintiff then asked the court to give the following written charges, which the court gave, and the defendant separately and severally excepted to each one of them as given: (A) "The jury are not obliged to find for the defendant at all events; and if they do not believe the evidence tending to acquit the defendant of negligence, then a verdict may be found for the plaintiff." (C) "When the plaintiff shows that defendant's train killed his bull, the burden of proof, that the injury was the result of unavoidable accident, or other matter acquitting the defendant of negligence, is cast on the defendant, and unless the jury believe the defendant has established the exculpating fact, by a preponderance of the evidence, the jury must find for the plaintiff." (D) "Although the jury believes from the evidence that the engineer and fireman were at their posts and doing their duty, and although the jury may believe the testimony of the engineer, that the head-light in the locomotive that killed plaintiff's bull cast its light only 60 feet in front of the engine; yet, if they believe from the evidence that a proper and good head-light, such as are in use on the best equipped railroads, would cast its light to a greater distance, and to such a distance as would aid the officers in charge of the train in avoiding accidents and injuries to stock, then the jury is authorized to infer that the head-light on said locomotive was defective; and unless it is shown that the defect, if they find it was defective, arose from some cause occurring in the course of travel, they are authorized to find the defendant guilty of negligence; and if they also believe that this negligence was the proximate cause of the injury to plaintiff's bull, they must find for the plaintiff." Plaintiff also asked the following charge: (B) "Even if the jury should believe that the bull was not seen at a distance at which the train could be brought

to an actual stop at the place where the bull was seen, nevertheless, if the animal could and ought to have been seen in time for the engineer to check up his speed, and sound his whistle, they must find for the plaintiff." The court gave this charge, but with an explanatory charge, which is set out in the opinion, and the defendant duly excepted to the giving of both the charge asked and the explanatory charge. The defendant requested the court to give the following charge in writing: (1.) "The court charges the jury that if they believe all the evidence in this case, they should find their verdict for the defendant." The court refused to give this charge, and the defendant duly excepted.

There was judgment for the plaintiff; and the defendant now brings this appeal, and assigns the various rulings of the lower court as error.

WOOD & WOOD, and J. J. MAYFIELD, for appellant.—The court erred in not excluding the evidence as to the value of the animal killed.—57 Ala. 515; 58 Ala. 393; 85 Ala. 465; *R. R. Co. v. Vance*, 8 Pa. 764; *Halp v. Curtiss*, 5 S. W. Rep. (Tex.) 457; Phillips on Evidence, 738, 739. The court erred in not excluding the testimony of Hamner and Bridges. 88 Ala. 472; 85 Ala. 465; 58 Ala. 393; 57 Ala. 515; 46 Ala. 590; 1 Greenl. Ev., § 50; 7 Am. & Eng. Encyc. of Law, p. 59; Phillips on Ev., 738–9. The court erred in giving the charges requested by the plaintiff.—85 Ala. 269; 85 Ala. 481; 78 Ala. 494; 74 Ala. 150. The court erred in refusing to give charge (1) asked by defendant.—85 Ala. 481; 74 Ala. 150; 67 Ala. 13; 67 Ala. 470; 68 Ala. 539; 63 Ala. 432; 54 Ala. 271; 47 Ala. 290.

FRANK S. MOODY and J. M. FOSTER, *contra*.—The court did not err in any of its rulings upon the evidence.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 708; *Pollak v. Grant*, 69 Ala. 373; *Rawles v. James*, 49 Ala. 121; *Burks v. Hubbard*, 69 Ala. 379; 1 Brick. Dig. 109, §§ 81, 93; *Emry v. R. R. Co.*, 9 S. E. Rep. 139; *Mosly v. R. R. Co.*, 73 Iowa, 268. The court properly gave the charges requested by the plaintiff.—*R. R. Co. v. Hembree*, 85 Ala. 481; *R. R. Co. v. Caldwell*, 83 Ala. 196; *R. R. Co. v. McAlpine*, 90 Ala. 73; *R. R. Co. v. Bees*, 83 Ala. 340; *R. R. Co. v. McAlpine*, 75 Ala. 113; *R. R. Co. v. Jones*, 71 Ala. 487; *R. R. Co. v. Jones*, 65 Ala. 74, *R. R. Co. v. Lyons*, 62 Ala. 72. Charge (1) requested by the defendant was properly refused.—*R. R. Co. v Lazarus*, 88 Ala. 453; *DePoister v. Gilmer*, 82 Ala. 435; *Ins. Co. v. Ins. Co.*, 81 Ala. 329; *Tait v. Murphy*, 80 Ala. 440; *Hall v. Posey*, 79 Ala. 84;

*Searle v. Edmondson,* 73 Ala. 295. Upon all of the evidence in this case, the court might have given the general affirmative charge in favor of plaintiff; and, therefore, if any of the rulings of the lower court were erroneous, they were without injury to defendant, and can not work a reversal.— *Cotton Seed Oil Co. v. Perry,* 85 Ala. 158; *Pritchett v. Pollock,* 82 Ala. 169.

CLOPTON, J.—There is no error in refusing to exclude the evidence of Hamner and Bridges, as to the value of the animal killed. The former had been, and was superintendent of plaintiff's stock farm for several years, and the latter is a farmer engaged in raising and selling cattle, and had raised and sold some half-breed Galloway calves, the animal killed being a thorough-bred Galloway bull. Both of them knew the bull, his breed and peculiar merits. When the witness knows the property, no peculiar skill is requisite to qualify him to testify to its value; neither is it necessary that the opinion of the witness shall be based upon actual sales at the place. Though such sales are more reliable evidence of the market value, the witnesses may give their opinion, based upon general observation and experience, and knowledge of the property and its intrinsic merits.— *Ward v. Reynolds,* 32 Ala. 384; *State v. Finch,* 70 Iowa 316; s. c., 59 Am. Rep. 443; *Cantlin v. Han. & St. Lo. R. R. Co.,* 54 Mo. 385; s. c., 14 Am. Rep. 476.

Neither is there error in refusing to exclude the evidence of Hollis and Bridges, which was introduced in rebuttal. The motion to exclude is based upon the grounds, that the witnesses are not shown to be experts, and that the circumstances testified to by them, having occurred at other times than the killing of the animal, and having no connection with it, are irrelevant. While the rule, requiring the evidence to be confined to the issue, excludes all collateral facts not put in issue, by the pleadings, and which are incapable of affording any reasonable inference or presumption as to the principal matter of controversy, it does not exclude any facts which shed light on the main enquiry, and do not tend to withdraw the attention of the jury from such enquiry. In *Brickell v. Mills,* 128 Mass. 291, in an action for the price of a loom attachment, sold under an agreement that it should work successfully, whether it did so or not, being the question in dispute, the plaintiff, after introducing evidence that the defendant's loom and another loom were substantially alike in the mechanical arrangements, though different somewhat in details, was permitted to put in evidence that the attachment had worked

successfully on the latter loom. The evidence was held admissible. And in *Gr. Trunk R. R. Co. v. Richardson*, 91 U. S. 454, which was an action against a railroad company for injury caused by fire communicated by a locomotive, evidence that at various times during the same summer some of the defendant's locomotives scattered fire in passing buildings, though it was not shown that either of those which the plaintiff claimed communicated the fire was among the number, or similar in make, was held admissible, as tending to prove a consequent probability that some locomotive caused the fire, and a negligent habit of the officers and agents of the railroad company. These cases are cited as illustrations of the applications of the rule; but we need not extend it so far to sustain the relevancy of the evidence in the present case.

Whether the head-light on defendant's engine was suitable and effectual, reflecting its light far enough to enable the engineer to discover obstructions on the track in time to stop the train before reaching them, were material enquiries involved in the issue presented by the pleadings. Any evidence which sheds light on these material enquiries can not be said to be irrelevant. The engineer and fireman having testified, that the head-light would not cast its light so that an obstruction on the track of the size of the animal killed, could be seen in time to avoid injury, it was competent for the plaintiff to prove, in rebuttal, facts from which the jury might infer that the head-lights in ordinary use on the defendant's trains reflected light far enough to make obstructions visible at a greater distance, and that the head-light on the particular locomotive was defective, or that the engineer and fireman did not keep a proper lookout. The facts testified to transpired on the same road, and about the part of the road where the animal was killed. The engineer and fireman testified that on the night of the accident there was no fog or moisture, the atmosphere was dry and it was clear. The conditions were the same or less favorable on the occasions testified to by the witnesses.—7 Amer. & Eng. Ency. of Law, 59, 60.

The court having instructed the jury, if they believed the defendant's evidence they must find for defendant, there was no error in charging, at the instance of plaintiff, that they "are not obliged to find for defendant at all events, and if they do not believe the evidence tending to acquit the defendant of negligence, then a verdict may be found for the plaintiff." It having been shown that the animal was killed by a moving train of defendant, the burden was shifted on the company to show that proper diligence to prevent the injury was used, or

that, without fault on its part, the animal was not discovered until the peril became so imminent that the injury could not have been averted by use of all the means known to skillful engineers.—*Nash. Chatt. & St. Lou. R. R. Co. v. Hembree*, 85 Ala. 481. The credibility of the defendant's witnesses was, and must be, left to the jury; and when the testimony by which the party on whom is cast the burden of proof, attempts to sustain his cause of action or defense, as the case may be, is not believed, the logical result is, an adverse verdict.—*Ala. Gr. So. R. R. Co. v. McAlpine*, 80 Ala. 73.

The proposition asserted by charge B is, that plaintiff is entitled to recover, if the animal could and ought to have been seen in time for the engineer to check the speed of the train and blow the whistle, though it might not and could not have been seen in time to stop the train, so as to avoid the injury. When an obstruction on the track could and ought to have been, but was not discovered in time to avert the catastrophe, the actionable negligence consists, not in the omission to check the speed of the train, or blow the whistle, but in the failure to keep a proper lookout.—*East Tenn., Va. & Ga. R. R. Co. v. Bayliss*, 77 Ala. 429. The engineer is not required to check the speed of the train if, when an animal is seen on the track, the injury can not possibly be prevented.

But it is insisted, that any error in the charge is cured by what is designated an explanatory charge given by the court, *ex mero motu*, to the effect "that the jury must further believe that the accident could have been prevented if the engineer had seen the bull as soon as he could and ought to have seen him." Section 2756 of the Code provides that all charges moved for by either party in writing must be given or refused in the terms in which they are written, and the judge must write thereon given or refused, as the case may be, and sign his name thereto. The section does not prevent giving an explanatory charge, but prohibits the court from qualifying, limiting or modifying a charge requested and given. A charge asked, which needs qualification or modification to make it a correct legal proposition as applicable to the evidence, should be refused.—*Eiland v. State*, 52 Ala. 322. The purpose and office of an explanatory charge is to simplify a charge given, or to relieve it of involvement or obscurity or to prevent misunderstanding or misapplication. The charge given by the court of its own motion did not explain, but qualified or limited the charge given at request of plaintiff, and does not cure the apparent error.

[Ala. Great Southern Railway Co. v. Moody.]

As a general proposition, a railroad company fulfills the duty, and observes the care imposed by the law, when it furnishes its road with such machinery and appliances as are generally used on well regulated roads, and have been found sufficient, safe and prudent. The rule settled by our decisions is, that the company does not owe the duty to adopt new inventions, though some persons, regarded skillful and experienced, may deem them less dangerous, but that the company fullfils its duty, when it adopts those in ordinary use by prudently conducted and well regulated roads, engaged in like business, under like circumstances.—*Louis. & Nash. R. R. Co. v. Allen*, 78 Ala. 494; *Ga. Pac. R'way. Co. v. Propst*, 83 Ala. 518; *Wilson v. Louis. & Nash. R. R. Co.*, 85 Ala. 269; *Louis. & Nash. R. R. Co. v. Hall*, 87 Ala. 708. It is true these were cases of employès; but, in the case last cited, it is said, generally, "As to appliances—particularly new inventions or changes claimed to be improvements—all railroads are not required to conform to one standard. Allowance is, and must be made, for diversity of opinion, and their use by a majority of roads does not necessarily require all railroads to adopt them." This is the general rule as to the duty and degree of care required of railroad companies.

The rule declared in *Memphis & Charleston Railroad Company v. Lyon*, 62 Ala. 71, that due care is not observed, when a train is run at such speed that it can not be stopped within the limit at which the engineer can plainly see upon a straight track an obstruction thereon of the size of a man or young mule, was explained and qualified in *Ala. Gt. So. R. R. Co. v. Jones*, 71 Ala. 487, as follows: "It was not intended to assert more than that it is the duty of railroad companies to employ the best machinery and appliances which are in use, and the failure to employ them, in view of the hazardous agencies they control, the dangers necessarily incidental, is a want of the care and diligence a man of ordinary prudence would observe. The omission to provide them is a violation of the duty enjoined by law; and if there is no more in the particular case then the omission and consequent injury, the court may, as a matter of law, declare there is actionable negligence." This explanation was emphasized in *Ala. Gt. So. R. R. Co. v. McAlpine*, 75 Ala. 113. Though not required to adopt every new invention, public policy requires that a railroad company, on account of the hazards incidental to the employment of the powerful agency of steam, be held to the exercise of the utmost practicable care and diligence, and that it keep apace with the improvements of progressive skill and experience, adopting such machinery and appliances as shall be found by actual

[Mobile & Birmingham Railroad Co. v. Ladd.]

tests to diminish the perils of life and property incident to the nature of the business. This, as we understand it, is the extent of the meaning of the terms "the best machinery and appliances which are in use," as employed in the cases referred to above. Utility, demonstrated by use, not the mere fact that an invention is adopted by the best equipped roads, is made the standard of duty. The defect in charge D. consists in this: it makes mere use on the best equipped railroads the test of a proper and good head-light, thus making the acts of such roads, the absolute rule as to the degree of care required of defendant, or other roads, without regard to its actual utility or superiority as demonstrated by the use. Particular machinery and appliances may be in. use on the roads best equipped generally, and yet not the best machinery and appliances in use.

. There is no error in the last charge given at request of plaintiff. Certainly defendant is not excused, if by proper diligence the animal ought to have been seen in time to frighten it off the track, by the mere fact that the engineer did not see it until the train was within sixty feet of the animal.

For the errors mentioned judgment is reversed and cause remanded.