## Southern Ry. Co. v. Morris, Admr.

*Action for Damages for Failure to Keep Road in Repair
at Crossing.*

1. *Practice; death of plaintiff; revival of action.*—Where a plaintiff
   dies after the commencement of an action, and leave is granted
   to revive in the name of plaintiff's personal representative, an
   order, that the suit be revived in the name of a person as ad-
   ministrator of the estate of the original plaintiff, makes such
   party a plaintiff in his representative capacity, and not as an
   individual.
2. *Railroad company; duty as to repairs at a public crossing.*—If a
   railroad company constructs its road across a public road, the
   duty devolves upon it, not only to put the crossing and ap-
   proaches in proper repair, but also to keep them in such re-
   pair. Section 1164 of the Code does not shift this duty.
3. *Evidence; non-experts.*—When a witness is shown to be familiar
   with a thing to be valued, such value is a thing upon which he
   can give an opinion, although he is not an expert.
4. *Witness; bias; payment by party for attendance.*—The payment
   of a witness for his attendance, made by a party, may be
   shown as tending to show bias, but this is not the case where
   the witness is paid only for his attendance at a former trial
   of the cause; section 1341 of the Code authorizes such pay-
   ment, and no adverse intendment can be drawn therefrom.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. E. B. ALMON.

This was an action brought against the appellant to recover damages to a mare, alleged to have been caused by defects in a bridge, which defendant had erected at a place where its railroad crossed a public road.

From a judgment for the plaintiff, the defendant appealed.

HUMES & SPEAKE, for the appellant.

W. B. & W. L. CHITWOOD and KIRK, CARMICHAEL & RATHER, for appellee.

ANDERSON, J.—This action was brought by Lou Morris, and the record recites that her death was suggested and it was continued, "To be revived in the name of the personal representative, when made known." At a subsequent term the following order was made: "On motion, it is ordered by the court, that suit be revived in the name of George Morris as the administrator of the estate of Lou Morris, deceased." George Morris then became the plaintiff in his representative capacity, and not as an individual. The case of *Bryant v. Southern Railway Co.*, 137 Ala. 488, and cases there cited, and which seem to be relied on by counsel to warrant for defendant the general affirmative charge, have no application to the case at bar. They relate to suits originally brought by the administrator and not actions brought by one who dies after suit is brought and which are revived.

"If a railroad company constructs its road across a public road, or highway, the duty devolves upon it to put and keep the approaches and crossing in proper repair for the use of the traveling public."—*Patterson v. L. & N. R. R. Co.*, 89 Ala. 318; *Pratt Coal Co. v. Davis*, 79 Ala. 308; *L. & N. R. R. Co. v. McLendon*, 63 Ala. 266.

Our attention is called to section 1164 of the Code of 1896 by counsel for defendant, who insist, that the liability of the railroad ceases when the crossing and approaches are once put in good condition and are accepted by the proper authorities. This Court has fol-

lowed the weight of authority in holding that it is the continuous duty on the part of railroads to keep public road crossings and approaches in good repair. Indeed, this is a common law burden and the statute in question was certainly not intended to shift the obligation to keep the highway in repair at the railroad crossing, from the railroad to the county.—*Chesapeake & Ohio R. R. v. Dyer County,* 38 Am. & Eng. R. R. Cases, 676.

"The text-writers, so far as we are advised, treat this as the settled rule of construction. Says Mr. Pierce: 'The laying of a railroad across highways often requires excavation and erections, and a greater or less change in the surface. The duty, however, to restore the highway, as far as may be, to its former condition, and to erect and maintain structures necessary for such restoration, is presumed to be incumbent upon the company, even without any express requirement imposed by statute.'—Pierce R. R., 245. In speaking of the usual requirement, that the railroad company shall restore the highway which it crosses to its former state, so as not to impair the latter's usefulness, Mr. Mills remarks: 'The word usefulness implies capabilities for use, and appertains to the future as well as the present.'—Mills Em. Dom. § 198. 'But such crossings and places so occupied are to be restored by the railroad company to a passable condition, and so kept, as is consistent with the use thereof by the railroad company.'—1 Ror. R. R. 456, 454. Mr. Wood says: 'If the statute simply provides that the company shall restore the highway to its former state of usefulness, etc., they are invested with a discretion as to the matter, and are also charged with the further duty of keeping that part of the highway in proper condition.' 'The right to lay a railroad track in a public street or highway carries with it the obligation not only to lay it in a proper manner, but also to keep it in repair.' Citing *Worster v. Forty-Second St. R. Co.,* 50 N. Y. 203, and *Killinger v. Same,* Ib. 206. Under the head 'When private person or corporation bound to repair,' Mr. Thompson says: * * * 'The books afford many illustrations of this rule. Thus a person or corporation cuts a canal or mill-race across a highway.

He or it must bridge the same in a substantial manner, and keep the bridge in safe repair.  *  *  *  *  So the owner of a railway crossing a highway must restore the highway by a bridge or otherwise, and, if a bridge, must keep the bridge in repair, or pay to any person the damages growing from this neglect.' "—American & English Railroad Cases, 679, 680.

There was no error in permitting the witnesses to testify as to the value of the mare as they all knew her. Nonexperts can give their opinion upon certain subjects, and value is one upon which they can give an opinion; the proper predicate being that the witness was acquainted or familiar with the thing to be valued.—*A. G. S. R. R. v. Moody,* 92 Ala. 279; *Ward v. Reynolds,* 32 Ala. 384; *State v. Finch,* 70 Iowa, 316; 59 Am. Rep. 443; 14 Am. Rep. 476; 1 Wigmore on Evidence, § 716.

The question of contributory negligence was properly left to the determination of the jury.

Since we hold that the bridge in question was an approach to the crossing and that it was defendant's duty to keep it in repair, it was not injurious to said defendant to admit evidence that it had previously kept up and repaired said bridge.

The question propounded to the witness on cross-examination, "Were you paid by defendant for attending court as a witness," was *prima facie* admissible for the for the purpose of showing bias, but when the answer disclosed that defendant had done nothing except pay certificates formerly issued to him as a witness in the case, the motion to exclude should have been sustained. Section 1341 authorizes the witness to demand pay for his former attendance and, if not paid, he is excused from again attending. The defendant had simply done what the statute contemplates and it should not be used to affect the credibility of a witness, upon the idea that he is biased in favor of a party to a cause, who simply discharges to the witness a legal obligation. The rule laid down in *Moore v. N. C. & St. L. Ry.,* 137 Ala. 495, and cases there cited, does not place a bias upon witnesses who have only received what the statute authorizes. In those cases the witnesses were not confined in their compensation to what the statute provided, but

were transported to the place of trial free of charge and had their expenses paid by the defendant while there.

There is no merit in the other assignments of error. Reversed and remanded.

McCLELLAN, C. J., TYSON and SIMPSON, J.J., concurring.